577 P.2d 1101 (1977)
DISCOVERY LAND AND DEVELOPMENT COMPANY, a Colorado Corporation, and Gary W. Short, Plaintiffs-Appellants,
v.
COLORADO-ASPEN DEVELOPMENT CORP., a Colorado Corporation, Mitchell Development Corporation of the Southwest, a Texas Corporation, Mitchell Energy and Development Corp., a Texas Corporation, and Mitchell Energy Corp., a Texas Corporation, Defendants-Appellees.
No. 76-943.
Colorado Court of Appeals, Division II.
December 29, 1977.
Rehearing Denied February 9, 1978.
*1102 Neef, Swanson & Myer, Glen B. Clark, Jr., Denver, for plaintiffs-appellants.
Saunders, Snyder, Ross & Dickson, P. C., William J. Kirven, III, Denver, for defendants-appellees.
RULAND, Judge.
The plaintiffs, Discovery Land and Development Co. (Discovery) and Gary W. Short, appeal from a summary judgment dismissing their complaint against the defendants, Colorado-Aspen Development Corporation, Mitchell Development Corporation of the Southwest, Mitchell Energy and Development Corporation, and Mitchell Energy Corporation. We reverse and remand for further proceedings.
Based upon the pleadings, depositions, and affidavits before the trial court in conjunction with the motion for summary judgment, the following facts are not in dispute. Mitchell Energy and Development Corporation is the parent corporation of Mitchell Energy Corporation and Mitchell Development Corporation of the Southwest (Mitchell Southwest). Mitchell Southwest is in turn the parent corporation of Colorado-Aspen Development Corporation (Colorado-Aspen).
Discovery owned three parcels of land, encumbered by a single "blanket" mortgage held by Diversified Mortgage Investors (DMI) as security for a loan of approximately 3.6 million dollars. In late 1972 or early 1973, Discovery and Mitchell Southwest commenced negotiations for the purpose of forming a joint venture between Discovery and Colorado-Aspen to construct condominiums, a hotel, and other commercial units on one of the parcels known as the Interchange Property; the parties also negotiated relative to the terms upon which the other parcels would be brought into the joint venture. These negotiations culminated in the "Discovery 9000 Joint Venture Agreement" which was signed by representatives of Discovery, Colorado-Aspen, and Mitchell Southwest on October 22, 1973.
The Agreement provided, inter alia, that:
"Notwithstanding anything contained in this agreement to the contrary, the rights and obligations of all of the Venturers pursuant to this Agreement shall be expressly contingent and conditioned upon the obtaining of the new blanket mortgage. . . . If said mortgage cannot be obtained, this Joint Venture Agreement shall be null and void and the parties shall be released of any further rights, liability or obligation with respect hereto. Upon obtaining a commitment from a mortgage lender, [Discovery] shall transmit a copy of said commitment letter to Aspen. Aspen shall have a period of 7 days from the date of its receipt of the aforesaid commitment letter to approve or disapprove the terms of the commitment to lend. If Aspen does not approve the new blanket loan within that 7 day period and [Discovery] wants to proceed nevertheless, this Agreement shall terminate and Aspen shall have no interest in the Property."
Subsequent to October 22, discussions and negotiations concerning new financing took place between the members of the joint *1103 venture and DMI. However, the Boards of Directors for both Colorado-Aspen and Mitchell Southwest rejected a loan commitment obtained from DMI, and the present action was initiated thereafter by Discovery and Gary W. Short as assignee of part of Discovery's claim.
In the complaint, Discovery alleged three claims for relief. Damages were requested in the first and second claims against Colorado-Aspen and Mitchell Southwest, respectively, for breach of contract. The third claim was for compensatory and punitive damages from all of the other Mitchell Companies for intentional interference with the Joint Venture Agreement. The defendants answered denying liability, alleged various affirmative defenses to all of the claims, and then filed a motion for summary judgment contending that none of the defendants were liable for the damages alleged by Discovery since the loan commitment offered by DMI had been rejected in conformity with the provisions of the Joint Venture Agreement quoted above.
By affidavit filed in opposition to the motions and insofar as pertinent here, the president of Discovery stated that during the summer prior to execution of the Joint Venture Agreement, representatives of Mitchell Southwest and Discovery attempted to obtain financing for development of the Interchange Property and that he was "continually assured by representatives of Colorado-Aspen and Mitchell Southwest that an agreement would be signed and the property developed." As a result, and even though the loan with DMI was in default, Discovery made no further attempts to obtain either financing for the project or another financial partner for the joint venture.
Following execution of the Joint Venture Agreement, the affidavit relates that Discovery cancelled a Hilton Hotel franchise purchased previously for $20,000, as instructed by Mitchell Southwest and Aspen. In addition, and in conjunction with development of the Interchange Property, the president states that Mitchell Southwest agreed in advance to specify what financing terms would be acceptable to it.
According to the president, in December of 1973 representatives of Mitchell Southwest and Discovery met with DMI and discussed various alternatives for financing. Thereafter, the president was advised by representatives of Mitchell Southwest that Mitchell Energy and Development Corporation was concerned about the Arab oil embargo and the economic conditions resulting therefrom, and that even though the loan terms offered by DMI were more favorable than had been anticipated, the Mitchell Energy and Development Corporation desired even more favorable terms. Specifically, the president was advised that although the balance of the terms offered by DMI were acceptable, the joint venture must not be responsible for a loan in excess of 1.8 million dollars on the Interchange Property. The president thereupon requested a written confirmation from Mitchell Southwest as to the terms of financing it would accept. A letter was issued by Mitchell Southwest on January 28, 1974, which specified loan terms the Board of Directors "would consider for approval," including a maximum loan of 1.8 million dollars against the Interchange Property. However, DMI thereafter answered that it would require a loan of 2.1 million dollars against the Interchange Property.
About February 14, 1974, a meeting took place between representatives of all of the joint venturers and DMI in an attempt to resolve the financing problems. The affidavit alleges that after discussion, the DMI representative agreed to recommend to his Board of Directors a refinancing loan which encumbered the Interchange Property to the extent of 1.8 million dollars, but which was contingent upon a commitment from Discovery to apply the first $300,000 in profit from the joint venture to DMI. According to the president, after the meeting he was pleased to have the negotiations completed with a loan proposal "which was acceptable" to the joint venture. The president also affirms the allegations of an affidavit by an attorney for Discovery which recites that "all participants expressed their *1104 satisfaction in completing the negotiations successfully with DMI after many months of protracted negotiations." Thereafter, a loan commitment was issued by DMI but ultimately rejected by Mitchell Southwest and Colorado-Aspen. The affidavit concludes with allegations to the effect that DMI had not pursued foreclosure on Discovery's loan because of the joint venture, and that there was no opportunity for Discovery to obtain another financial partner with the result that a subsequent foreclosure by DMI cost Discovery six million dollars of equity in the various parcels.
Based upon the allegations in the affidavits, Discovery argued to the trial court, and contends here, that material issues of fact appear as to whether the parties modified the Joint Venture Agreement when Mitchell Southwest specified the loan terms it would accept, whether those terms were satisfied by the loan commitment from DMI, and whether Mitchell Southwest and Colorado-Aspen waived and are now estopped to rely upon the provision of the Joint Venture Agreement which authorized them to disapprove any loan proposal. For these reasons, Discovery contends that entry of summary judgment was improper as to its first two claims for relief.
In response to these contentions, the defendants first point to allegations in the complaint to the effect that the Joint Venture Agreement was a "valid contract." The defendants construe this allegation as an admission which now precludes Discovery from urging either that the contract was modified or that the defendants were estopped from rejecting the DMI loan commitment. The defendants also contend that Discovery may not rely upon the estoppel and waiver theories because those doctrines were not specifically alleged in the complaint. The defendants thus request that we strictly construe the complaint and, in effect, ignore the allegations of fact contained in the affidavits. This we may not do.
As stated by our Supreme Court in Smith v. Mills, 123 Colo. 11, 225 P.2d 483 (1950), the purpose of C.R.C.P. 8(a) governing the complaint is "not to require the pleader to set forth the facts with particularity, but merely to apprise the adverse party of the nature of his claim." In the present case, while the complaint does not refer specifically to estoppel and waiver, in the claims asserted against Mitchell Southwest and Colorado-Aspen, Discovery alleges that Mitchell Southwest represented which loan terms would be acceptable to it, that Discovery relied upon these representations and secured a commitment based thereon, and that Colorado-Aspen knew that if the joint venture did not proceed with the loan, DMI would foreclose. Even assuming that these allegations are insufficient to fully apprise the defendant of the estoppel and waiver theories, Smith v. Mills, supra, further instructs that:
"A summary judgment `should never be entered, save in those cases where the movant is entitled to such beyond all doubt. The facts conceded should show with such clarity the right to a judgment as to leave no room for controversy or debate. They must show affirmatively that plaintiff would not be entitled to recover under any and all circumstances.. . .'" (emphasis supplied)
Accordingly, where, as here, there are allegations in the complaint and facts appearing in an affidavit which may be construed as supporting the theories of estoppel and waiver, and those theories are argued to the trial court, we hold that the trial court must treat the complaint as amended for purposes of considering a motion for summary judgment. See, e. g., Freeman v. Marine Midland Bank-New York, 494 F.2d 1334 (2d Cir. 1974); Seaboard Terminals Corp. v. Standard Oil Co., 104 F.2d 659 (2d Cir. 1939).
In support of the trial court's ruling, the defendants next point to the contents of the letter from Mitchell Southwest indicating loan terms "that would be considered for approval," and the fact that Discovery thereafter submitted the DMI loan commitment to Mitchell Southwest and Colorado-Aspen for review. Based upon these facts, they then argue that no oral modification of *1105 the contract was established relative to the rights of Mitchell Southwest and Colorado-Aspen to reject any financing proposal. However, this contention ignores the statements of the president and the attorney for Discovery in their affidavits. Further, neither the trial court nor this Court may attempt any assessment of the credibility of proposed evidence in conjunction with a motion for summary judgment. See Abrahamsen v. Mountain States Telephone and Telegraph Co., 177 Colo. 422, 494 P.2d 1287 (1972).
We have considered the defendants' other contentions relative to the propriety of the trial court's ruling on the estoppel and waiver issues and find those contentions to be without merit.
The defendants next claim that entry of summary judgment was proper because the allegations of an oral modification to the terms of the Joint Venture Agreement relied upon by Discovery are nonenforceable under the Statute of Frauds provision pertaining to real property, § 38-10-108, C.R.S.1973. As a corollary to this contention, the defendants also argue that the parol evidence rule would preclude Discovery from presenting oral evidence as to any modification of the terms of the Joint Venture Agreement. These contentions have no merit.
A written contract may be subsequently amended by an oral agreement, and the parol evidence rule has no applicability under these circumstances. Arkansas Valley Bank v. Esser, 75 Colo. 110, 224 P. 227 (1924). Further, where an oral modification agreed to by the parties has been fully performed, a contract which affects interests in real property may be modified as to a material condition by a subsequent oral agreement without violating the Statute of Frauds. See Burnford v. Blanning, Colo., 540 P.2d 337 (1975); Doherty v. Doe, 18 Colo. 456, 33 P. 165 (1893). Here, it is alleged that the acts of the members of the joint venture in obtaining the loan terms specified by Mitchell Southwest amounted to full performance of the oral modification.
Discovery finally contends that the trial court erred in granting summary judgment on its third claim for relief which alleges that Mitchell Energy Development Corporation and Mitchell Energy Corporation tortiously interfered with the Joint Venture Agreement. In response, defendants point to certain allegations in Discovery's complaint, statements in the affidavit of Discovery's president, as well as certain arguments by Discovery based thereon which suggest that Colorado-Aspen and Mitchell Southwest were mere agents of Mitchell Energy Development Corporation and Mitchell Energy Corporation. Defendants then argue that if these allegations are true (even though defendants assert they are not), there could be no tortious interference because the commission of this tort requires the existence of a valid contract between Discovery and a "third party" not under the control of Mitchell Energy Development Corporation and Mitchell Energy Corporation. However, until the disputed issues of fact are resolved as to the relationship between the four defendants, no legal determination can be made as to whether the parent corporations are liablefor tortious interference with a contract of the subsidiaries. Thus, entry of summary judgment on this claim was improper.
The judgment is reversed and the cause remanded with directions to reinstate Discovery's complaint, and for further proceedings consistent with the views herein expressed.
SMITH and BERMAN, JJ., concur.