**Robert S. BENHAM, as Receiver of Manufacturers and Wholesalers Indemnity Exchange, Plaintiff-Appellant,**

v.

**John William PRYKE, as lead Underwriter personally and as Representative of those certain Underwriters at Lloyd's of London, Under Lloyd's Policies Nos. FTL001623 and FTL00945 and Cover Notes U73167A and U7316B; and Excess Insurance Co., LTD., Defendants-Appellees.**

Nos. 82CA1378, 84CA0227.

Colorado Court of Appeals, Div. I.

March 21, 1985.

Rehearings Denied April 18, 1985.

Certiorari Denied Pryke Aug. 19, 1985.

Certiorari Granted Benham Aug. 19, 1985.

Holmes & Starr, P.C., Sidney W. De-Long, Kenneth L. Starr, Denver, for plaintiff-appellant.

Kenneth C. Groves, Philip A. Rouse, Jr., Denver, for defendants-appellees.

PIERCE, Judge.

Plaintiff, the receiver of Manufacturers and Wholesalers Indemnity Exchange (M & W), appeals the summary judgment in favor of defendants, underwriters of Lloyd's of London (the reinsurers). This is an action to recover proceeds claimed to be due under assessment liability reinsurance policies issued by the reinsurers to some subscribers of M & W. We reverse.

M & W was an interinsurance exchange governed by § 10–13–101, et seq., C.R.S.

Consequently, M & W subscribers were subject to contingent assessment liability if M & W's liabilities in a given year exceeded its assets. Some subscribers, to negate this risk, purchased reinsurance certificates from the reinsurers to cover possible assessment liability. The terms of reinsurance coverage were provided for in a "Master Agreement" between the subscribers of M & W and the reinsurers. We ruled in *Benham v. Pryke*, 636 P.2d 1339 (Colo. App.1981) that the currency of the Master Agreement extended until the termination of outstanding reinsurance certificates.

M & W was placed in receivership in 1975, and, in February 1977, the trial court ordered the receiver to levy assessments against all M & W subscribers whose policies were in effect during 1974 and 1975.

Subsequent to *Benham, supra*, the parties undertook discovery, and filed motions including motions for summary judgment. M & W in support of its motion submitted documents consisting of: the Master Agreement; a computer printout indicating the serial number of each reinsurance certificate, the name of the subscriber, the period of insurance, and the premium charged; a copy of the statements received from Lloyd's of London billing M & W for the issuance of certificates; a copy of M & W's check paying the premium for such issuance; and an affidavit by a custodian of M & W's files testifying from personal knowledge as to these documents.

I.

The reinsurers first argue that M & W's production of only a computer printout as evidence of the existence of the certificates is legally insufficient and entitles the reinsurers to a summary judgment. We disagree.

In *Benham, supra*, we said:

"The ultimate question then remains as to whether reinsurance coverage existed at the time of the 1977 assessment, and a genuine issue of material fact exists as to whether any certificates of reinsur-

ance were issued so as to be in force at the time of the 1977 assessment."

■ Because such issues of material fact, and others, remained for resolution, we remanded and reversed a dismissal for failure to state a claim for relief granted in favor of defendants. Those same questions of material fact still remain unresolved at this time. By granting summary judgment without trial on these issues the court ruled improperly on the credibility of the proposed evidence in conjunction with the motion for summary judgment. *See Discovery Land & Development Co. v. Colorado-Aspen Development Corp.*, 40 Colo.App. 292, 577 P.2d 1101 (1977).

■ The admissibility of the computer printout is governed by the rules of relevancy, authentication, and hearsay. M & W's documentation addresses the existence, issuance, and duration of the reinsurance certificates; thus, it is relevant. CRE 403. Although Colorado appellate courts have not addressed the issue of authentication of computer printouts, the notes of the advisory committee on the identical federal rule, Fed.R.Evid. 901(b)(9), state that the rule applies to computer-generated information. Additionally, CRE 1001(3) states that if data are stored in a computer, any printout shown to reflect the data accurately is an "original." Thus, authenticity should not be a bar here.

■ Computer records which are material and relevant are admissible under the business records exception to the hearsay rule if (1) the computer entries are made in the regular course of business; (2) those participating in the record making were acting in the routine of business; (3) the input procedures were accurate; (4) the entries are made within a reasonable time of the transaction involved; and (5) the information was transmitted by a reliable person with knowledge of the event reported. *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187 (Colo.1984); *see United States Fidelity & Guaranty Co. v. Young Life Campaign, Inc.*, 42 Colo.App. 298, 600 P.2d 79 (1979). According to M & W's affidavit, the computer printout was kept

in the course of regularly conducted business activity, it was the regular practice of that business activity to make that date compilation, and a custodian of such compilation was testifying from personal knowledge as to its input and content. *See* CRE 803(6).

■ Since the affidavit and documentation, therefore, are based on admissible facts, the reinsurers are not entitled to a summary judgment based only on M & W's inability to produce the actual reinsurance certificates. *Cf. In re Estate of Abbott*, 39 Colo.App. 536, 571 P.2d 311 (1977). A summary judgment proceeding is not a substitute for a trial; thus, a proper foundation for the admissibility of the computer records must still be laid at trial. *See Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970).

## II.

Because some other issues may be presented at trial, we address them at this time.

The parties seem to have difficulty in interpreting *Benham, supra*, where this court held that the currency of the Master Agreement "extended until the termination of outstanding reinsurance certificates." The Master Agreement provides for indemnification of each subscriber reinsured under the terms of the agreement for assessments made during the currency of the agreement. Thus, any subscribers with certificates of reinsurance which were in existence on or before June 30, 1974, the date that the Master Agreement terminated, and which were issued for a period extending through February 1977, had reinsurance coverage.

The existence of such certificates is a factual issue to be decided at trial. *Benham, supra*. Similarly, the question of whether there has been a settlement and extinguishment of the assessment claims against subscribers is factual and therefore, is a matter to be resolved at trial, rather than on motion for summary judgment. C.R.C.P. 56.

■ Arguing that certain entities are under the reinsurer's control, M & W contends that a protective order issued in 1978 erroneously prohibited the receiver from obtaining documents in the possession of the entities. In its protective order, the trial court required production of documents and submission to discovery only by the lead underwriter, John Pryke. The trial court denied M & W's motion for production of documents stating that the entities were not subject to the "control" of the reinsurers because Lloyd's of London does not do business through agents, and the brokers are agents of the insured, not the insurer.

Based on the record, the trial court had good cause for issuing the protective order and, thus, did not abuse its discretion. *See* C.R.C.P. 26(c) and 34(a); *Michael v. John Hancock Mutual Life Insurance Co.*, 138 Colo. 450, 334 P.2d 1090 (1959).

■ Finally, M & W submit that the trial court's award of costs and attorney's fees under § 13–17–102, C.R.S., is erroneous and should be reversed. We agree.

The facts in this suit are complex, difficult, and controverted. The receiver's maintenance of this action is neither frivolous nor groundless under the statute.

The summary judgment entered by the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

VAN CISE and TURSI, JJ., concur.