Pamela JAFFE, an Incapacitated Person, by Peter A. Jaffe and Joan F. Jaffe, her legal guardians; Peter A. Jaffe and Joan F. Jaffe, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF DENVER and Denver Parks & Recreation District and John Does (1–99), Defendants–Appellees.

No. 98CA1960.

Colorado Court of Appeals, Div. V.

June 22, 2000.

Certiorari Denied Jan. 16, 2001.

Law Offices of Peter A. Jaffe, Peter A. Jaffe, Douglas Jaffe, McCoy, Colorado, for Plaintiffs–Appellants.

Daniel E. Muse, City Attorney, Efrain M. Padro, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs, Pamela Jaffe, an incapacitated person, through Peter A. Jaffe and Joan Jaffe, her parents and legal guardians, and Peter A. Jaffe and Joan Jaffe, individually, appeal the judgment in favor of defendants, the City and County of Denver, the Denver Parks and Recreation District, and John Does 1–99 (collectively, the City). Plaintiffs also appeal the trial court's order awarding attorney fees to the City. We affirm the judgment, but reverse the order awarding fees.

Pamela Jaffe was severely injured when she was struck by lightning while playing golf on a course owned and operated by the City. Plaintiffs brought this action against the City asserting claims for: (1) negligence; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) respondeat superior; (5) loss of consortium, and (6) violation of Pamela Jaffe's due process rights under 42 U.S.C. § 1983 (1994).

The City moved to dismiss plaintiffs' state law tort claims under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1999, moved for summary judgment on plaintiffs' § 1983 claim, and also moved for dismissal of the parents' loss of consortium claim, asserting that such a claim was not cognizable in Colorado.

The City also moved to strike the equal protection claim, contending that it was not included in the complaint and was not properly before the court. Plaintiffs maintained that the complaint set forth a legally sufficient equal protection claim or, if it did not, that they should be granted leave to amend their pleading to add such a claim with specificity.

The trial court granted the City's motion to dismiss, stating that the undisputed facts failed "to show that the physical condition of the golf course was unsafe for public use on the day Pamela Jaffe was injured," and that her injuries arose "from an intervening act of nature."

It also rejected the § 1983 claim, concluding the City did not have an obligation under the Due Process Clause to protect Pamela Jaffe against an act of nature. The court did not rule on the equal protection claim, which was based on the City's alleged failure to provide timely emergency medical services, or on the City's motion to strike.

Plaintiffs appealed, and the City then cross-appealed based on the court's failure to award it attorney fees. After the cross-appeal was dismissed based on a "lack of ruling on fees," the City sought a ruling on attorney fees in the trial court, and requested $4,125 in fees pursuant to § 13–17–201, C.R.S.1999. The trial court awarded the City the fees

requested, and following the denial of plaintiffs' motion for reconsideration, plaintiffs appealed from that order. The appeal regarding attorney fees was consolidated into this appeal.

### I. State Tort Law Claims

Plaintiffs first contend the failure of the City to protect Pamela Jaffe from lightning on the golf course constituted a "dangerous condition" within the meaning of the GIA. We disagree.

Public entities are immune from liability in all claims for injury which lie in tort or could lie in tort except to the extent waived by the GIA. Section 24–10–106(1), C.R.S.1999. As pertinent here, a public entity's immunity is waived for a "dangerous condition located in any ... public facility located in any park or recreation area maintained by a public entity...." Section 24–10–106(1)(e), C.R.S.1999.

A "dangerous condition" is defined in § 24–10–103(1), C.R.S.1999, as:

a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate....

In interpreting a statute, our primary task is to determine and give effect to the intent, or purpose of the General Assembly. *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996). That intent is first determined by looking at the statutory language itself, giving words and phrases their commonly understood meaning. *See Mason v. Adams,* 961 P.2d 540 (Colo.App.1997).

Because the GIA is in derogation of Colorado's common law, the grant of immunity is to be strictly construed against the public entity and the waiver provisions are to be deferentially construed in favor of victims. *See Walton v. State,* 968 P.2d 636 (Colo. 1998); *but see City & County of Denver v. Gallegos, supra,* 916 P.2d at 515 ("[T]he GIA requires that exceptions to governmental immunity be interpreted narrowly in order to avoid imposing liability not specifically provided for in the statute.").

Whether immunity has been waived under the GIA is an issue of subject matter jurisdiction to be determined by the trial court pursuant to C.R.C.P. 12(b)(1). *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993). If all relevant evidence has been presented to the trial court, and the underlying facts are not in dispute, the issue of waiver may be decided as a matter of law. *Swieckowski v. City of Fort Collins,* 934 P.2d 1380 (Colo.1997); *Johnson v. Regional Transportation District,* 916 P.2d 619 (Colo.App.1995).

Here, it is undisputed that: (1) the golf course is a public facility located in a park or recreation area; and (2) it did not have a formal medical assistance system, an automatic lightning system, a foul weather detection system, or an evacuation plan.

At issue is whether the absence of such protections created a "dangerous condition" for purposes of the GIA. We conclude that it did not.

Under the GIA, the dangerous condition must be proximately caused by the "negligent act or omission of the public entity in constructing or maintaining" a public facility. Section 24–10–103(1), C.R.S.1999. *See Springer v. City of Denver,* 990 P.2d 1092 (Colo.App.1999) (City was not vicariously liable under the GIA for the negligent construction of a public building by an independent general contractor). And, under § 24–10–103(1), "[a] dangerous condition shall not exist solely because the design of any facility is inadequate." *See Swieckowski v. City of Fort Collins, supra.*

As quoted above, § 24–10–103(1) further states that "maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facili-

ty." *See Lyons v. City of Aurora*, 987 P.2d 900 (Colo.App.1999) (the definition of "dangerous condition" in the GIA does not require the City to modify a facility because of changing safety standards or use).

We acknowledge, as does the City, that improvements can be made for the safety of players, and that other golf courses have installed formal medical assistance systems, automatic lightning and foul weather detection systems, or have at least implemented warning and evacuation plans. While these protections may be highly desirable, we nevertheless conclude that, based on the clear language of the statute, the City's failure to take such steps did not create a "dangerous condition" on the golf course for purposes of the GIA.

Accordingly, the trial court did not err in dismissing plaintiffs' state law tort claims. *See Hames v. State*, 808 S.W.2d 41 (Tenn. 1991)(the absence of lightning proof shelters or devices to warn golfers of thunderstorms on a golf course owned and operated by the state did not constitute a negligently created or maintained dangerous condition).

## II. § 1983 Claims

Plaintiffs next contend the trial court erred in granting summary judgment in favor of the City on the § 1983 claims. We disagree.

Summary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. Once the moving party has met the initial burden of production, the burden shifts to the non-moving party to establish that there is a triable issue of fact. *Civil Service Commission v. Pinder*, 812 P.2d 645 (Colo.1991).

■ In order to prevail under § 1983, a plaintiff must show that the defendant, under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. *See Uberoi v. University of Colorado*, 713 P.2d 894 (Colo.1986);

*Duong v. County of Arapahoe*, 837 P.2d 226 (Colo.App.1992).

■ A local governmental entity's liability for damages under § 1983 is limited to situations involving the implementation or enforcement of a local ordinance, policy, or custom. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *County of Adams v. Hibbard*, 918 P.2d 212 (Colo.1996). The policy need not be codified and may be evidenced by a widespread practice so permanent and well settled as to constitute a custom or usage having the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Walter v. City & County of Denver*, 983 P.2d 88 (Colo.App.1998).

■ In addressing a substantive due process or equal protection challenge, the court must determine whether the challenged policy creates a suspect class or affects a fundamental constitutional right. *Lorenz v. State*, 928 P.2d 1274 (Colo.1996). If it does not, the court need only determine whether the policy bears a rational relationship to a legitimate governmental purpose. *People v. Young*, 859 P.2d 814 (Colo.1993).

### A. Equal Protection

■ Initially, we reject the City's contention that the equal protection issue is not properly before this court because plaintiffs failed to raise it in their complaint or by amendment.

Plaintiffs' complaint set forth a § 1983 claim against the City when it alleged that the City's "actions and omissions as set forth herein violated [Pamela Jaffe's] due process protected right to life, liberty, pursuit of happiness and personal security." Plaintiffs also alleged that the City "deprived the constitutional rights of [Pamela Jaffe] as a result of formal and/or informal policies adopted by means of its official decision making channels."

In their response to the City's motion to dismiss, plaintiffs asserted various arguments and also submitted an affidavit and documents in support of a claim based on equal protection principles. Then, in re-

sponse to a motion by the City to strike the equal protection arguments, plaintiffs requested permission to amend their complaint to state an equal protection claim in the event the trial court found that they had not stated such a claim.

The trial court ruled on the City's motion to dismiss on the same day that plaintiffs filed their response seeking permission to amend their complaint, and apparently did not have an opportunity to consider the City's motion to strike or plaintiffs' equal protection argument. Nevertheless, because the affidavit filed by plaintiffs set forth a claim based on equal protection, we conclude this argument was properly before the trial court. Hence, we may consider it here. *See Discovery Land & Development Co. v. Colorado–Aspen Development Corp.*, 40 Colo. App. 292, 577 P.2d 1101 (1977) (when facts and argument are presented in an affidavit, the trial court must treat the complaint as amended for purposes of considering a motion for summary judgment); *SaBell's, Inc. v. City of Golden*, 832 P.2d 974 (Colo.App. 1991). *See also* C.R.C.P. 15(a)(entitling plaintiffs to amend complaint as a matter of right because no responsive pleading had been filed); *Lutz v. District Court*, 716 P.2d 129 (Colo.1986) (leave to amend should be granted freely when justice so requires).

■■■ Equal protection guarantees ensure that persons similarly situated will receive like treatment under the law. *Harris v. The Ark*, 810 P.2d 226 (Colo.1991). To establish an equal protection violation, there must be a showing that a group of persons has been arbitrarily singled out for disparate treatment in comparison to other persons similarly situated. *See Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo. 1996).

■■■ Plaintiffs maintain that the City's administration of its emergency medical services resulted in the disparate treatment of persons located in the southeastern part of the City in comparison to persons located in other parts of the City. In support of this argument, they presented evidence that the average response time for ambulances in the southeastern part of the City was significantly slower than for other parts of the City.

According to plaintiffs, an unstated basis for this result was the limitation on damages contained in the GIA.

■■■ Plaintiffs concede, and we agree, that providing emergency medical services does not implicate a fundamental right or a suspect class. Therefore, our analysis of this issue is under the rational basis standard which requires only that the City's actions be rationally related to a legitimate governmental purpose. *See People v. Young, supra.* In other words, the City's actions must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the alleged classification, whether or not the basis has a foundation in the record. *See Alexander v. Whitman*, 114 F.3d 1392 (3d Cir.1997).

Here, even if we assume that citizens in the southeastern part of the City have received disparate treatment, we conclude that the geographic difference in the various locations compared by plaintiffs, as well as the expense that would be involved in providing equal response times for ambulance service throughout the City, would constitute a rational financial justification for that disparate treatment. Because there exists at least one conceivable state of facts to support the City's actions, we must reject plaintiffs' equal protection claim. *See Alexander v. Whitman, supra.*

## B. Due Process

We also perceive no error by the trial court in rejecting Pamela Jaffe's due process argument based on the alleged dangerous condition of the golf course.

■■■ The constitutional guarantee of due process does not convert all common law duties owed by government actors into constitutional torts. This guarantee has been applied only to "*deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986) (original emphasis).

■■■ In evaluating a § 1983 claim, the governing principle is that the Due Process Clause was designed to prevent arbitrary

exercise or abuse of government power. *De-Shaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Henderson v. Gunther,* 931 P.2d 1150 (Colo.1997).

In *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the United States Supreme Court considered whether § 1983 provided a remedy for a municipal employee who was fatally injured in the course of his employment because the city customarily failed to train or warn its employees about known hazards in the workplace. The Court held there was no violation of the Due Process Clause because the city did not have a constitutional duty to provide a safe working environment. The Court rejected the assertion that the city's alleged failure to train its employees could be properly characterized as arbitrary or shocking to the conscience, concluding instead that it was more analogous to a state-law tort claim.

The *Collins* holding is instructive here. Pamela Jaffe was not under the care or custody of the City, but was voluntarily on the golf course, and the City did not cause the harm to her. Thus, even if we assume the City failed to take action to mitigate against the effects of lightning strikes by one or various means, we conclude that, as in *Collins,* such inaction by the City is not actionable under § 1983. *See also Henderson v. Gunther, supra* (to give rise to a constitutional duty to protect, state actors must do more than create an environment in which harm occurs; they must abuse their governmental power by subjecting a person to harm that would not have occurred absent the state actor's conduct).

Nor do plaintiffs point to a particular policy or practice of the City, or allege that the failure to act resulted from a widespread practice so permanent and well settled as to constitute a custom or usage having the force of law. Again, even if we assume a constitutional duty existed, the facts alleged here, while tragic, do not reach the level that is required to impose liability under the federal Constitution. See *Collins v. City of Harker Heights,* supra; *Henderson v. Gunther, supra;* see also *Jackson v. City of Joliet,* 715

F.2d 1200 (7th Cir.1983) (attempt by state officers to assist at an accident that was unsuccessful because of their negligence and resulted in death of accident victim was not a deprivation of life without due process of law under the Fourteenth Amendment), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984); *Estate of Morgan v. Mayor & City Council of Hampton, Virginia,* 936 F.Supp. 343 (E.D.Va.1996) (city had no duty under the due process clause to provide adequate fire services, even after having undertaken to do so).

Accordingly, we conclude the trial court did not err in rejecting the due process claim based on the condition of the golf course. We similarly reject the related assertion that Pamela Jaffee's due process rights were violated by the City's failure to provide emergency medical services in a timely manner. *See People v. Hughes,* 946 P.2d 509 (Colo. App.1997) (the standard of review for a substantive due process claim is the same as for an equal protection claim). *See also Collins v. City of Harker Heights, supra* (municipal decisions concerning the allocation of resources to individual programs involve policy choices to be made by locally elected representatives, and the Due Process Clause does not provide a remedy for such decisions).

### III. Attorney Fees

Plaintiffs next contend the trial court erred in awarding the City its attorney fees under § 13–17–201 because the entire action was not dismissed pursuant to C.R.C.P. 12(b). We agree.

Section 13–17–201 provides in relevant part that:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

This section was enacted to discourage the unnecessary litigation of tort claims, *see Employers Insurance v. RREEF*

*USA Fund–II (Colorado), Inc.,* 805 P.2d 1186 (Colo.App.1991), and is applicable to a motion to dismiss under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the GIA. *See Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App.1996).

It requires a court to award reasonable attorney fees whenever an entire tort action, but not a single tort claim, is dismissed under C.R.C.P. 12(b). *See First Interstate Bank v. Berenbaum,* 872 P.2d 1297 (Colo.App.1993) (court dismissed one claim under C.R.C.P. 12(b)(5) and entered summary judgment as to another); *see also Sundheim v. Board of County Commissioners,* 904 P.2d 1337 (Colo.App.1995) (rejecting award of attorney fees under § 13–17–201 because one of the plaintiffs' four claims had been restored in part); *Holland v. Board of County Commissioners of County of Douglas,* 883 P.2d 500 (Colo.App.1994) (concluding defendants were not entitled to attorney fees under § 13–17–201 because the trial court's C.R.C.P. 12(b)(5) dismissal affected only three of the plaintiff's claims for relief).

Section 13–17–201 does not apply to the dismissal of a § 1983 claim. *State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo. 1998) (42 U.S.C. § 1988 (1994) preempts § 13–17–201 with respect to the award of attorney fees to a prevailing defendant on a § 1983 claim).

Here, only plaintiffs' state law tort claims were dismissed pursuant to C.R.C.P. 12(b). The § 1983 claim was dismissed by the court after applying summary judgment standards. Thus, because the entire action against plaintiffs was not dismissed pursuant to C.R.C.P. 12(b), we conclude the trial court erred in awarding attorney fees under § 13–17–201. *See First Interstate Bank v. Berenbaum, supra.*

The judgment is affirmed, but the order awarding attorney fees to the City is reversed.

Judge KAPELKE and Judge CASEBOLT concur.