The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Daniel HUEHN, Defendant–Appellant.

No. 00CA0505.

Colorado Court of Appeals,
Div. V.

Jan. 17, 2002.

Rehearing Denied April 4, 2002.

Certiorari Denied Sept. 16, 2002.

Ken Salazar, Attorney General, Peter J. Cannici, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Peter B. Albani, Greenwood Village, CO, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Daniel Huehn, appeals the judgment of conviction entered on a jury verdict finding him guilty of theft. We affirm.

On December 24, 1998, technicians responding to a call to service a Key Bank automated teller machine (ATM) discovered that the safe at the bottom of the machine was unlocked and the money cassettes normally found there were missing. The cassettes had been in the safe when the ATM was serviced on the morning of December 23, and customers had withdrawn money from the machine throughout that day. Computer records showed that the safe had been opened at approximately 9:30 p.m. on December 23, although there had been no call for service at that hour.

Defendant, one of the ATM technicians who had access to this machine, admitted in a written statement to his employer that he had opened the safe sometime between 8:30 and 9:30 p.m. on December 23 while at the site on a call regarding another ATM. He claimed, however, that the cassettes were still in the safe at that time.

## I.

Defendant first contends that the trial court abused its discretion in admitting into evidence certain computer-generated records that were not sufficiently authenticated. We disagree.

The exhibits at issue are computer records reflecting customer transactions and technician servicing at the ATM on December 23 and 24, 1998. Four of the exhibits were records generated for Key Bank by Money Access Services (MAC), with whom Key Bank had contracted to process its ATM transactions. Defendant objected to admission of these records on the grounds that there was an insufficient foundation for their admission as business records under CRE 803(6) and the records were not authenticated in accordance with CRE 901(b)(9). The trial court overruled the objections and admitted the exhibits.

Although he did not object on this basis at trial, defendant also contends on appeal that

Exhibit 14, a portion of a status tape that recorded the openings and closings of the ATM vault on a hard drive inside the machine, should have been excluded for lack of authentication.

## A.

■ As an initial matter, we reject defendant's contention that, because computer-generated evidence is "a species of scientific evidence," the prosecution had to make the showing required under *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), before the evidence could be admitted. *See People v. Shreck*, 22 P.3d 68 (Colo. 2001)(CRE 702, rather than *Frye*, governs admissibility of scientific evidence).

In support of his contention, defendant cites R. Bailin et al., *Colorado Evidentiary Foundations* (Miche 1997). However, that authority itself recognizes that, while presentation of scientific evidence usually requires proof of the validity of the underlying theory and the reliability of the instrument, "computers are so widely accepted and used that the proponent of computer evidence need not prove those two elements of the foundation." *Colorado Evidentiary Foundations, supra,* ch. 4(C)(2), at 52; *see also Brooks v. People*, 975 P.2d 1105, 1112 n. 7 (Colo.1999)(rejecting view that "whenever one can find 'science' by scratching beneath the surface of expert testimony, the validation rules governing scientific evidence would have to apply").

The trial court in this case properly focused its inquiry on whether a sufficient foundation had been laid to warrant admission of the proffered records under the applicable rules of evidence.

## B.

■ The admissibility of a computer printout is governed by the rules of relevancy, authentication, and hearsay. *Benham v. Pryke,* 703 P.2d 644 (Colo.App.1985), *rev'd on other grounds,* 744 P.2d 67 (Colo.1987). The relevancy of the computer records in this case is not disputed.

■ The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. CRE 901(a). Whether a proper foundation has been established is a matter within the sound discretion of the trial court, whose decision will not be disturbed absent a clear abuse of that discretion. *People v. Slusher,* 844 P.2d 1222 (Colo. App.1992).

■ The hearsay objection to the admissibility of computer-generated records may be overcome by, among other methods, showing that such records are admissible under CRE 803(6), the business records exception to the hearsay rule. Material and relevant computer records are admissible under this exception if: (1) the computer entries are made in the regular course of business; (2) those participating in the record making were acting in the routine course of business; (3) the input procedures were accurate; (4) the entries were made within a reasonable time after the transaction involved; and (5) the information was transmitted by a reliable person with knowledge of the event reported. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984); *Benham v. Pryke, supra.*

## C.

Here, Key Bank's ATM accounting supervisor testified that transactions at the bank's ATMs are electronically communicated to, and recorded by, MAC, which handles the processing of the transactions. MAC's computer-generated reports for each ATM are transmitted daily to Key Bank, stored for three months in Key Bank's computer, then transferred to fiche. The witness testified that Key Bank received and stored the records in the ordinary course of its business, and he identified the exhibits at issue as accurate copies of Key Bank's fiche record of activity at the ATM on the relevant dates.

A representative of the company that serviced Key Bank's ATMs testified similarly that the status tapes for the ATMs are kept inside the ATMs on the hard drive and automatically record each opening and closing of the safe.

It was undisputed that the entries on all the exhibits were made within a reasonable time of the transactions involved.

Defendant contends that this testimony was insufficient to satisfy the requirements for admitting computer records under CRE 803(6) because (1) the first four exhibits were MAC records but were not introduced by anyone from MAC, and (2) the prosecution did not show that the computer input procedures were accurate by complying with the authentication procedure in CRE 901(b)(9). We reject both contentions.

### 1.

■ The fact that the records created by MAC were introduced through the Key Bank officer, whose department received and kept the records, did not preclude their admission under CRE 803(6). *See Hauser v. Rose Health Care Systems,* 857 P.2d 524 (Colo.App.1993)(documents created by one business but regularly received, maintained, and relied upon by another may be admitted as business records of the latter); *Teac Corp. v. Bauer,* 678 P.2d 3 (Colo.App.1984)(records prepared by another source that are adopted and integrated in regular course of established business procedures into records sought to be introduced are admissible under CRE 803(6), even if identity of person whose first-hand knowledge was the basis of a particular entry is not established).

### 2.

■ Defendant also argues that, to establish the accuracy of the input procedures, the prosecution was required to proceed in accordance with CRE 901(b)(9), which permits authentication by "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." This showing was not made, he contends, because the Key Bank foundation witness admitted on cross-examination that he did not know how or when the MAC computer had been programmed, whether it had been repaired, or whether procedures were used to ensure the accuracy of the program. Nor did the authentication witness for Exhibit 14, the status list, testify that the system that generated the list produced an accurate result.

Defendant acknowledges that Colorado cases have not previously required compliance with CRE 901(b)(9) as a condition of admitting computer-generated business records. However, he cites *Colorado Evidentiary Foundations, supra,* for the proposition that Colorado courts have been "lax" in applying the authentication requirement to computer records, admitting them with "minimal analysis of authenticity issues," and he argues that we should require such further authentication in this case. We decline to do so.

First, although CRE 901(b)(9) may be used to authenticate computer records, there is no requirement, either in the rule itself or in Colorado case law construing the rule, that computer records be authenticated *only* in this way.

Second, computer business records have a greater level of trustworthiness than an individually generated computer document such as that at issue in *People v. Slusher, supra,* relied on by defendant, in which a division of this court upheld the exclusion of a purported lease agreement that was apparently created by the defendant on his computer.

Finally, courts have generally declined to require testimony regarding the functioning and accuracy of the computer process where, as here, the records at issue are bank records reflecting data entered automatically rather than manually. *See United States v. Moore,* 923 F.2d 910 (1st Cir.1991)(testimony by bank's loan officer was sufficient to authenticate computer-generated loan histories); *State v. Veres,* 7 Ariz.App. 117, 436 P.2d 629 (1968)(fact that bank's foundation witness was unfamiliar with operation of encoding machine that generated bank records did not preclude their admission as business records), *overruled by State v. Osborn,* 107 Ariz. 295, 486 P.2d 777 (1971); *People v. Lugashi,* 205 Cal.App.3d 632, 252 Cal.Rptr. 434 (1988)(where computer record consists of retrieval of automatic inputs rather than computations based on manual entries, testimony on acceptability, accuracy, maintenance, and reliability of computer hardware

and software need not be produced for purposes of admitting record into evidence).

In *People v. Lugashi,* microfiche copies of computer tapes containing credit card account information were introduced in a prosecution for grand theft. In rejecting an authentication argument similar to that made here, the *Lugashi* court observed that bank statements prepared in the regular course of banking business, in accordance with banking regulations, are in a different category than ordinary business and financial records of a private enterprise. The court also noted that the "bulk of other jurisdictions" had similarly declined to require more extensive authentication of such records. *People v. Lugashi, supra,* 252 Cal.Rptr. at 442 (collecting cases).

We agree with the rationale of those decisions upholding the admission of computer-generated bank records without the additional authentication urged by defendant, and accordingly conclude that the trial court did not abuse its discretion in declining to exclude the computer records in this case based on lack of authentication.

## II.

Defendant next contends that admission of an incomplete copy of the status tape that recorded openings and closings of the ATM safe violated the best evidence rule. We disagree.

Under CRE 1002 and 1003, the so-called "best evidence rules," an original is generally required to prove the contents of a writing, but a duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate in lieu of the original. CRE 1004(1) further provides that an original is not required if it has been lost or destroyed, unless it was lost or destroyed in bad faith.

■ Determining the admissibility of evidence offered in lieu of an original writing under these rules is within the trial court's discretion, and that court's determination will not be disturbed absent clear evidence of mistake amounting to an error of law. *United Cable Television of Jeffco, Inc. v. Mont-* *gomery LC, Inc.,* 942 P.2d 1230 (Colo.App. 1996).

■ Mere speculation or supposition that an original document may have contained information that the duplicate did not, or vice versa, does not amount to a showing that it would be unfair to admit the duplicate and thus does not preclude admission of the duplicate under CRE 1003. *Equico Lessors, Inc. v. Tak's Automotive Service,* 680 P.2d 854 (Colo.App.1984).

■ The prosecution's foundation witness for Exhibit 14 identified it as a copy of a portion of the status tape that was kept inside the ATM on the hard drive. The tape was retrieved by a technician who took it off the machine in the presence of the witness. The witness then took the original tape roll and photocopied the portions offered into evidence. At the time of trial, he did not know where the original tape was.

Defendant objected to admission of the copy on the basis that it was incomplete and portions of some entries were cut off at the bottom of the page. He argued that the original tape was required. The trial court disagreed, noting that the critical portion, showing entry into the safe at 9:30 p.m. on December 23, was not cut off.

Admission of the duplicate was not an abuse of discretion. The foundation witness testified that the location of the original tape was unknown, and there was nothing to indicate that the original had been lost or destroyed in bad faith. For the reasons set forth in Part I, above, there is no genuine question as to the authenticity of the original tape. Finally, defendant has not shown that it was unfair to admit the duplicate in lieu of the original. He argues that a cut-off entry at the bottom of the first page of the exhibit might have shown a door opening at 6:56 p.m. on December 23, thereby establishing that the theft could have occurred then. This argument is not only speculative, *see Equico Lessors, Inc. v. Tak's Automotive Service, supra,* but also contradicts defendant's own written statement that the cassettes were in the safe when he opened it between 8:30 and 9:30 p.m. on December 23.

## III.

Defendant contends that the trial court unduly restricted his cross-examination of a witness, thereby violating his constitutional right to confront witnesses against him. We are unpersuaded.

■ The trial court has discretion to determine the scope and limits of cross-examination. Absent an abuse of discretion, the court's rulings will not be disturbed on appeal. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996).

In general, cross-examination should be limited to the subject matter of the direct examination and matters affecting credibility of the witness. CRE 611(b).

■ Although the constitutional right of an accused to confront witnesses includes the right of cross-examination, the latter right is not absolute. Rather, it is tempered by the trial court's authority to prohibit cross-examination on irrelevant and immaterial issues and to protect witnesses from questions that go beyond the bounds of proper cross-examination. *See People v. Thurman*, 787 P.2d 646 (Colo.1990); *see also People v. Collins*, 730 P.2d 293 (Colo.1986).

■ In this case, the prosecutor called defendant's employer's corporate security director to testify regarding his interviews with defendant after the theft. Defense counsel thoroughly cross-examined the witness, including challenging his account of when defendant claimed to have been at the ATM. During a brief redirect examination, the prosecutor elicited testimony from the witness that defendant himself had written the times when he was at the ATM on his statements, without being told by the witness what he should write. On recross-examination, defense counsel asked the witness to agree that defendant had told him a number of times during the interview that he had met with another individual at the ATM at earlier times. The prosecutor objected to the question as beyond the scope of the redirect examination, and the trial court sustained the objection.

Given the extensive cross-examination of this witness, there was no violation of defendant's confrontation rights. While the question on recross was arguably not beyond the scope of the redirect examination, we are not persuaded that defendant's inability to elicit a response to this single question affected his substantial rights. Therefore, any error in the trial court's ruling does not afford a basis for reversal. *See* C.A.R. 35(e) (appellate court shall disregard any error not affecting substantial rights of parties).

## IV.

Finally, we do not agree with defendant's contention that the prosecution failed to present sufficient evidence to prove the amount of money stolen from the ATM.

Where the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence, and must leave to the factfinder the resolution of conflicts, inconsistencies, and disputes in the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

To convict defendant of the charged offense in this case, the prosecution had to prove that the value of what was stolen was $15,000 or more. *See* § 18–4–401(2)(d), C.R.S.2001; *Henson v. People*, 166 Colo. 428, 444 P.2d 275 (1968).

■ The supervisor of Key Bank's accounting department testified that his department kept track of how much money was in the bank's ATMs. The witness was asked whether, based on the department's records, he knew how much money should have been in the ATM from which the cassettes were taken. He consulted a notebook and responded that the amount was $45,780. The witness further testified that Key Bank was reimbursed in that amount by the ATM security company.

This evidence was sufficient to establish the value of what was taken.

We reject defendant's contention that the evidence was insufficient because the witness was testifying without personal knowledge and was relying on a notebook that was not introduced into evidence. It was a reasonable inference from his testimony that he was familiar with the records of the department he supervised. Further, it was not improper for the witness to consult the notebook after testifying that it would help refresh his memory as to the amount. *See* CRE 612.

Finally, although defendant cites evidence suggesting the amount to which the witness testified was incorrect, that establishes only that the evidence of the amount stolen was conflicting. Weighing that conflicting evidence was for the jury. *See Kogan v. People, supra.*

The judgment is affirmed.

Judge KAPELKE and Judge ERICKSON * concur.