**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4732**

UNITED STATES OF AMERICA,

    Plaintiff – Appellee,

  v.

MICHAEL DERRICK PENINGER,

    Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Patrick Michael Duffy, Senior District Judge. (2:09-cr-00034-PMD-1)

Argued: October 28, 2011    Decided: December 1, 2011

Before GREGORY, SHEDD, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Thomas Aull Withers, Sr., GILLEN, WITHERS & LAKE, LLC, Savannah, Georgia, for Appellant. Michael Rhett DeHart, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal jury found that Michael Derrick Peninger operated a fraudulent investment and commodity trading scheme and, accordingly, convicted him of eight counts of mail fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2, and one count of making a false statement to a federal officer, in violation of 18 U.S.C. § 1001. Peninger absconded prior to sentencing, but he was eventually apprehended and sentenced to 240 months imprisonment and 3 years supervised release. On appeal, Peninger raises numerous issues regarding his conviction and sentence, and, considering each argument in turn, we affirm.[1]

I.

We first consider Peninger's contention that the district court abused its discretion in granting the Government's motion in limine to exclude testimony by Dr. Leonard Mulbry, the psychiatrist who performed Peninger's pretrial competency exam. See United States v. Iskander, 407 F.3d 232, 238 (4th Cir. 2005)

---

[1] Peninger raises a total of nine issues. In addition to the four addressed herein, Peninger also challenges the denial of a motion for continuance; the limiting of his cross-examination of a witness; and the denial of his motion for a new trial based upon newly discovered evidence. Peninger also challenges the procedural reasonableness of his sentence and contends that the Assistant United States Attorney's opening remarks constituted prosecutorial misconduct. We have reviewed each of these contentions and find them to be without merit.

(noting that we review exclusion of expert testimony for abuse of discretion). In a pretrial proffer, Dr. Mulbry testified that because of Peninger's severe narcissistic personality disorder, many of the fraudulent statements attributed to him were "most likely due to his mental illness," rather than an intent to defraud. (J.A. 119). The district court excluded the testimony, concluding that it was "simply diminished capacity evidence or some other form of justification in disguise," and that "[t]he fact that [Peninger's condition] may motivate that behavior in some way . . . does not negate the specific intent of doing it." (J.A. 129).

We conclude that the district court did not abuse its discretion in excluding the testimony. In United States v. Worrell, 313 F.3d 867 (4th Cir. 2002), we addressed the admission of diminished capacity testimony in cases, such as this, where the defendant was not pursuing an insanity defense. We started with a discussion of the Insanity Defense Reform Act (IDRA), which provides:

> (a) Affirmative defense.-It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

3

(b) Burden of proof.-The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C.A. § 17. As we explained, "[t]he language of the statute leaves no room for a defense that raises 'any form of legal excuse based upon one's lack of volitional control' including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.'" Worrell, 313 F.3d at 872 (quoting United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir. 1990).

Applying Worrell, we conclude the district court was within its discretion to exclude Dr. Mulbry's testimony. The evidence of Peninger's mental illness did not negate the specific intent to defraud his victims. In Worrell, we suggested testimony might be admissible if it was being offered "to show he did not do it, not that he could not help it." Id. at 874. Dr. Mulbry's testimony falls short of this standard because it does not suggest that Peninger did not defraud his victims or mean to defraud them. As the district court noted, the testimony is the very type of "volitional" evidence Worrell and the IDRA prohibit—a suggestion for why he committed fraud or why he could not help himself commit fraud. As we succinctly stated in Worrell, "IDRA bars a defendant who is not pursuing an insanity defense from offering evidence of his lack of volitional control as an alternative defense." Id. at 875.

4

II.

Next, Peninger contends that the district court abused its discretion in admitting certain bank records through an FBI agent. See United States v. Blake, 571 F.3d 331, 346 (4th Cir. 2009) (noting that a district court's evidentiary rulings are reviewed for abuse of discretion). At trial, the Government's case agent, Agent Derr, compared the investment statements Peninger issued to his investors with the investors' actual bank records. This comparison illustrated that Peninger sent false statements to his investors, claiming their accounts had much more money than they actually did. Agent Derr received the actual bank statements by way of subpoena. Peninger objected to the admission of these statements, arguing that someone had to "lay a foundation as to who received it, where it came from." The district court overruled the objections, concluding that anything received from a grand jury subpoena could be admitted through Agent Derr.

Peninger now argues that the bank statements are hearsay not subject to Federal Rule of Evidence 803(6), the business records exception. Peninger, however, failed to raise this objection below. Instead, as noted above, Peninger asserted only the Government's duty to authenticate the evidence and the agent's lack of personal knowledge regarding it.

Because Peninger failed to specifically object on the grounds raised on appeal, we review this argument for plain error. See Fed. R. Crim. P. 52(b). Peninger cannot meet this rigorous standard. In this appeal, the Government has filed a supplemental appendix noting that, before trial, the Government attorneys and Peninger's counsel communicated by email that the records would be admitted under Federal Rule of Evidence 902(11) and that the Government made the records and the written documents authenticating them available at the pretrial exhibit conference. Certification under Rule 902(11) obviates the need for the Government to authenticate business records at trial and permitted the bank records admission under Rule 803(6). See Fed. R. Evid. 902(11) (noting business records are admissible without authentication at trial if accompanied "by a written declaration of [the] custodian or other qualified person" attesting that the records satisfy the requirements of Rule 803(6)).

## III.

Peninger also challenges the district court's decision to permit the testimony of Kara Mucha, a trading investigator with the Commodities Futures Trading Commission (CFTC). Mucha testified regarding trading logs that showed the numbers of commodity futures Peninger was trading. These logs were obtained by subpoena from other commodity futures trading firms.

6

The purpose of this testimony was to show that Peninger traded far fewer commodity futures than he told his investors and clients.

Peninger objected that Mucha's testimony was hearsay, an objection which the district court overruled after it asked several questions to lay a foundation. Mucha told the district court that the documents were records maintained by companies at the direction of the CFTC, that the companies maintained the documents as business records, and that the companies had to forward these trading documents to the CFTC upon request. Mucha did not testify, however, as to how these individual trading firms maintained the records. The Government also noted that it had offered Peninger the opportunity to review these records months before trial, but Peninger had declined to do so.

The Government contends that Mucha's testimony was properly admissible under Rule 803(6). Peninger argues that these documents do not meet the requirements of 803(6) because Mucha was neither the "custodian" of the trading logs nor a "qualified witness." Courts have recognized that "[a] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." Federal Deposit Ins. Corp. v. Staudinger, 797 F.2d 908, 910 (10th Cir. 1986) (internal quotation marks

omitted).  Thus, records and testimony are admissible if there are sufficient "circumstances demonstrating the trustworthiness of the documents."  United States v. Johnson, 971 F.2d 562, 571 (10th Cir. 1992).  Applying this rationale in Johnson, the Tenth Circuit found admissible bank receipts that showed certain transactions between investors and the criminal defendants.  The court noted:

> There is simply no dispute that the transactions shown by the receipts took place as recorded.  As noted above, bank records are particularly suitable for admission under Rule 803(6) in light of the fastidious nature of record keeping in financial institutions, which is often required by governmental regulation.

Id.

Like banks, commodity futures trading firms are highly regulated by the federal government, and in this case there are sufficient "circumstances demonstrating the trustworthiness of the documents" to permit Mucha's testimony.

Moreover, even assuming this testimony was erroneously admitted under Rule 803(6), any error is harmless for two reasons.  First, courts have found that erroneous Rule 803(6) rulings are harmless when the evidence was otherwise admissible under Rule 807, the catchall provision.  See Karme v. C.I.R., 673 F.2d 1062, 1064-65 (9th Cir. 1982); United States v. Jacobs, No. 94-5055, 1995 WL 434827, *2 (4th Cir. 1995) (unpublished) (noting incorrect admission of evidence under Rule 803(6)

8

harmless when evidence was "both material and probative and the interests of justice were well served by their admission" and "nothing in the record . . . suggest[s] that the documents were other than what they purported to be").

Second, Mucha's testimony regarding Peninger's trading records was largely duplicative of evidence presented by the FBI that indicated only $60,000 of the $7.2 million Peninger obtained from investors was ever transferred to investment companies for trading. (J.A. 564-65). Mucha actually testified to a higher volume of trades, and her testimony in some regards benefitted Peninger's contention that he was trading his investors' money.[2]

IV.

Peninger also contends that the district court violated Federal Rule of Criminal Procedure 32(h)[3] by failing to provide notice of an upward departure. Sentencing in this case was

---

[2] The Government accounts for this discrepancy by noting that Mucha's records included trades by another individual named Michael Peninger, who was unrelated to this investigation.

[3] Rule 32(h) provides:

Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h).

scheduled for April 10, 2010.  On that morning, in lieu of reporting to court, Peninger absconded, remaining a fugitive for more than one week.  After his capture, sentencing was set for June 25, 2010.  Prior to this sentencing hearing, the Government filed a motion for a two-level upward departure for obstruction of justice.  The Government's motion stated that "the Government moves for a 2-level upward departure to account for [Peninger's] failure to appear at sentencing."  (J.A. 949).  The motion recounted that Peninger "already received an enhancement for obstruction of justice when he was convicted of lying to the FBI," and that Peninger "obstructed justice again when he committed perjury at trial."  (J.A. 948-49).  At sentencing, the Government argued that an upward departure was appropriate because Peninger committed perjury during trial and because he absconded.  The district court, concerned with punishing Peninger for absconding when the Government had already filed a new indictment against him for that offense, decided to apply an upward departure because of Peninger's perjured testimony.[4]

On appeal, the Government argues that its motion can be fairly read to request an upward departure on both Peninger's

---

[4] The Presentence Report (PSR) recommended, and the district court adopted, a two-level enhancement for obstruction of justice for Peninger's conviction for making a false statement to the FBI.  This upward departure was in addition to that two-level enhancement.

10

absconding and his trial testimony.  At sentencing, the district court indicated that it read the Government's motion to present both arguments, but Peninger contends that the motion, fairly read, only requests an upward departure for absconding.

Even assuming the Government's motion failed to provide proper notice, we believe any error is harmless.  See United States v. Davenport, 445 F.3d 366, 371 (4th Cir. 2006) (noting Rule 32(h) errors can be harmless), overruled in part on other grounds by Irizarry v. United States, 553 U.S. 708 (2008); Fed. R. Crim. P. 52(a) (noting "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").  The Presentence Report recommended a two-level enhancement for the false statement conviction and also for Peninger's numerous instances of perjury during trial.  Peninger was therefore on notice that his perjury was going to be used to enhance his offense level in some way.  Moreover, at sentencing the district court informed Peninger that it was considering a departure or additional enhancement for perjury and permitted Peninger to argue on this point.[5]

---

[5] This case is thus distinguishable from United States v. Spring, 305 F.3d 276, 282-83 (4th Cir. 2002), on which Peninger relies.  In Spring, the district court relied on a ground presented in the PSR for an upward departure but at sentencing failed to give the defendant the opportunity to present any argument.  Id. at 279-80.

11

In any event, we have recently indicated that "it would make no sense to set aside [a] reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011) (internal quotation marks omitted). The district court indicated throughout sentencing that it believed 240 months was the "appropriate" sentence, (J.A. 1034), and a sentence of 240 months is substantively reasonable.[6] See Savillon-Matute, 636 F.3d at 124. Accordingly, to the extent the district court erred in providing Rule 32(h) notice, any error is harmless.

V.

For the foregoing reasons, we affirm the conviction and sentence.

AFFIRMED

---

[6] Even assuming we remanded for a violation of Rule 32(h), the district court would not be prohibited from simply changing the two-level upward departure into a variance sentence to reach 240 months.

12