Opinion by JUDGE MILLER
*834 ¶ 1 Defendant, Francesca V. Marciano, appeals the judgment of conviction entered upon a jury verdict finding her guilty of theft from her employer. We reverse and remand for further proceedings.
¶ 2 In Morrison v. People, 19 P.3d 668 (Colo.2000), our supreme court held that when a defendant's challenge for cause of a juror is improperly denied, and the challenged juror ultimately serves on the jury, the defendant's right to a fair and impartial jury is violated and reversal is required. In Part II, we conclude that Morrison's holding is not affected by the supreme court's recent decision in People v. Novotny, 2014 CO 18, 320 P.3d 1194, which overruled the automatic reversal rule articulated in People v. Macrander, 828 P.2d 234, 243 (Colo.1992). We therefore apply Morrison in this case and conclude that defendant's convictions must be reversed. We also hold, in Part III.A.2.b., as a matter of first impression in Colorado, that a foundation for admission of bank statements under CRE 803(6) may be based on judicial notice of the nature of the business and of the records.
I. Background
¶ 3 Defendant began working for CDL Trucking as a secretary in 2004. Her duties included managing payroll, billing, making deposits, and loading money onto Comdata MasterCard cash cards for truck drivers' use while on the road. In 2005, the CDL owner became suspicious that defendant was stealing money from CDL. Upon reviewing a bank statement, he noticed defendant had signed multiple unauthorized CDL checks payable to herself or to "cash." When the owner confronted defendant with the unauthorized checks, she told him that she would never steal from him and that her ex-husband, also employed by CDL, must have been responsible.
¶ 4 The owner later learned that, in addition to the Comdata card he was aware of and kept in his possession, a second Comdata card had been issued in his name. Records from Comdata showed that defendant had authorized multiple transactions loading money onto the second card, and that the card had been used to make purchases and for cash withdrawals.
¶ 5 The People charged defendant with five counts of theft of $500-$15,000 (series) and two counts of theft of more than $15,000 (series). A jury found her guilty on all counts, and the trial court sentenced her to eight years of probation.
II. Juror Challenge
¶ 6 Defendant contends the trial court erred when it denied her challenges for cause to two jurors who indicated during voir dire that they expected defendant to present evidence in her defense. Defendant further argues that reversal is required because the challenged jurors ultimately sat on the jury. We agree with respect to the first challenged juror.
A. Standard of Review and Law
¶ 7 A criminal defendant has the right to a fair trial. U.S. Const. amends. V, XIV ; Colo. Const. art. II, §§ 16, 25. An impartial jury is an essential component of this right. Morrison, 19 P.3d at 672. Thus, a trial court must sustain a challenge for cause to a juror if the juror's state of mind "evince[s] enmity or bias toward the defendant or the state." § 16-10-103(1)(j), C.R.S.2013; see also Crim. P. 24(b)(1)(x).
¶ 8 While jurors often express concern or indicate preconceived beliefs during voir dire, such concerns and beliefs do not automatically disqualify them from service. People v. Fleischacker, 2013 COA 2, ¶ 27, 411 P.3d 20. The trial court or the prosecutor can rehabilitate a potential juror. Id. If the potential juror indicates that she can set aside those beliefs and make a decision based on the evidence and the court's instructions on the law, she may still sit on the jury. People v. Lefebre, 5 P.3d 295, 301 (Colo.2000), abrogated on other grounds by Novotny, 2014 CO 18, 320 P.3d 1194.
¶ 9 We review a trial court's decision regarding a challenge for cause for an abuse of discretion. Morrison, 19 P.3d at 672. "The abuse of discretion standard gives deference to the trial court's credibility assessments, *835 recognizing that court's unique perspective in evaluating the demeanor and body language of live witnesses, and it serves to discourage an appellate court from second-guessing the trial court's assessments based on a cold record." People v. Conyac, 2014 COA 8, ¶ 13, --- P.3d ---- ; see also People v. Samson, 2012 COA 167, ¶ 15, 302 P.3d 311. We review the entire voir dire of the prospective juror to determine whether the trial court abused its discretion when ruling on a challenge for cause. Carrillo v. People, 974 P.2d 478, 486 (Colo.1999).
¶ 10 Even if we determine that the trial court abused its discretion in denying a defendant's challenge for cause, however, reversal is not necessarily required. That depends, in the first instance, on whether the challenged juror participated in determining the defendant's guilt. Where the challenged juror did not, our supreme court's recent decision in Novotny requires that a defendant ordinarily must show that a different biased or incompetent juror sat on the jury. People v. Wise, 2014 COA 83, ¶¶ 28-29, 348 P.3d 482 (construing Novotny ). But where the challenged juror did sit on the jury, our supreme court held before Novotny, relying on United States Supreme Court precedent, that the defendant's right to an impartial jury is violated and reversal is required. Morrison, 19 P.3d at 671 (citing United States v. Martinez-Salazar, 528 U.S. 304, 315-16, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) ); see also Dunlap v. People, 173 P.3d 1054, 1081-82 (Colo.2007). This holding is unaffected by Novotny because Novotny applies to situations where the defendant used a peremptory challenge to excuse the previously challenged juror and eventually used all of her peremptory challenges. In that situation, the impairment of the right to an impartial jury arising from participation of the challenged juror has been eliminated. Where, however, the challenged juror participates, that impairment has not been eliminated. See Novotny, ¶ 23 n. 1.
B. The Voir Dire
¶ 11 At the beginning of voir dire, the trial court addressed the panel of prospective jurors, informing them that the burden of proof in the case was on the prosecution to prove all the elements of the charged crimes beyond a reasonable doubt and specifying that "[t]he defendant does not need to prove anything in this case." Defense counsel later questioned Juror M:
DEFENSE COUNSEL: [I]f the trial were to begin and you were to hear some evidence from the prosecution that was somewhat damaging, would you then want to hear some kind of explanation from the defense's side of things?
JUROR M: Yes.
DEFENSE COUNSEL: You would. Okay. And one of the important features of the burden of proof is not just that it's a high burden beyond a reasonable doubt, but also that it rests squarely on the shoulders of the prosecution and that legally the defense is not obligated to present any evidence or provide any explanations at all. So my question for you, ... then is would it be difficult for you to-let me rephrase. Do you think that you would maybe shift some of that burden onto the shoulders of the defense once you heard some evidence that was damaging and expect the defense to present some type of evidence refuting it or explaining it or something along those lines?
JUROR M: Well, I would hope so because that's both sides of the story. And then, you know, as the trial goes on and the witnesses and the whole thing, yes.
DEFENSE COUNSEL: Right. If the defense did not present any evidence in this case, would you be able to presume [defendant] innocent until deliberations began?
JUROR M: I'd have to hear the whole thing. You know, I'm not going to say one way or another.
DEFENSE COUNSEL: Okay. Do you think it could be-so it sounds to-correct me if I'm wrong. It sounds to me that you would expect the defense to present some type of evidence.
JUROR M: Yes.
¶ 12 Defendant challenged Juror M and a second juror for cause because of "burden shifting and the expectation of the presentation *836 of the case from the defense." The prosecutor responded that the jurors "simply indicated that they would listen to the evidence and make a ruling at the end of the case. Such an argument fails to clearly recognize that cross-examination will present evidence in this case." The trial court denied defendant's challenges, ruling
Each of [the jurors has] indicated to the Court and [they have] convinced the Court that they will listen to all the evidence, they'll follow the law, and only then determine a verdict and that they would base their verdict on the evidence that they hear and the law that I present to them.
Defendant exhausted her peremptory challenges. She did not excuse Juror M or the second juror, and both jurors were seated on the jury.
C. Analysis
¶ 13 Having reviewed the entire voir dire of Juror M with deference, we conclude that the trial court abused its discretion when it denied defendant's challenge for cause. We find support for our conclusion in People v. Hancock, 220 P.3d 1015 (Colo.App.2009). In Hancock, the trial court denied defendant's challenge for cause to a prospective juror who expressed her belief that while the prosecutor had to prove there was no reasonable doubt, it was defense counsel's job to prove that defendant was not guilty. Id. at 1018-19. The juror testified that she expected a balance of the evidence and that both parties shared an equal burden. Id . at 1018
¶ 14 The division of this court deciding Hancock concluded that a trial court should do one of three things if a prospective juror indicates an unwillingness to apply the law: (1) dismiss the juror for cause; (2) conduct rehabilitative questioning following up on the juror's concerning statements before denying the challenge for cause; or (3) make findings on the record explaining why the juror's statements indicating an unwillingness or inability to follow the law should be disregarded in light of other seemingly inconsistent statements. Id. at 1019-20. Because the trial court conducted no rehabilitative questioning, and made no credibility findings or assessments concerning the prospective juror's demeanor, the division held that the trial court abused its discretion in denying the challenge for cause, and it reversed the defendant's conviction. Id. at 1020.
¶ 15 In this case, as in Hancock, Juror M said that she expected defendant to present evidence in her defense. Neither the prosecutor nor the trial court engaged in any rehabilitative questioning of Juror M to clarify her expectations. The trial court gave no explanation on the record regarding why Juror M's statements should be disregarded. See id. (to provide a clear record on appeal, the trial court could have explained why a prospective juror's clear statements indicating her inability to follow the law should be disregarded in light of other earlier inconsistent statements).
¶ 16 The People, in their answer brief, cite to other portions of the voir dire in support of the trial court's conclusion. We are not persuaded by the People's arguments. The People emphasize that Juror M remained silent when defense counsel asked all prospective panel members if "anybody [thought] that because we're here and we've spent all day talking to all of you all and interrupted each of your lives that there must be some reason that we're here? That [defendant] must have done something wrong?" The People also argue that Juror M did not step forward when defense counsel asked all members of the panel to indicate if they had "a problem with" the standard of reasonable doubt. Silence, however, does not always constitute an affirmative indication of a juror's ability to follow the law and base her verdict on the evidence presented. Nor does it provide counter-balancing information that rehabilitates a juror and supports a trial court's denial of the challenge for cause. See People v. Clemens, 2013 COA 162, ¶ 15, --- P.3d ---- ("[W]here a prospective juror has taken a position supporting a challenge for cause, that juror's silence following a question or questions to the entire panel does not constitute sufficient rehabilitation.").
¶ 17 Thus, we conclude that the trial court's findings are not supported by the record. Juror M said that if she heard damaging *837 evidence from the prosecution, she would want an explanation from the defense and that she would expect the defense to present some evidence. The record does not contain any statements from Juror M indicating that she was able to follow the law and base her verdict on the evidence and law presented. Thus, the record does not support a finding that Juror M "convinced" the trial court of such an ability. While we defer to the trial court's unique perspective and ability to assess credibility and demeanor, absent any findings regarding credibility or demeanor we are left with a cold record devoid of any support for the trial court's conclusions. See Conyac, ¶ 13. We therefore determine that the trial court abused its discretion when it denied defendant's challenge for cause to Juror M.
¶ 18 Because Juror M was ultimately seated on the jury, defendant's right to a fair trial was violated. See Morrison, 19 P.3d at 671. We accordingly reverse defendant's convictions and remand the case to the trial court for a new trial. In light of our conclusion that the denial of defendant's challenge for cause to Juror M constituted reversible error, we need not consider defendant's arguments regarding the other challenged juror.
III. Remaining Contentions
¶ 19 Defendant also raises a number of other contentions of error. Specifically, she contends that the trial court improperly admitted her bank records and records that CDL received from Comdata. Because the prosecution relied on that evidence, these issues are likely to arise again on remand. Defendant also asserts that the evidence was insufficient to support her convictions on the counts involving theft through use of a Comdata card. We must consider that claim, because if defendant is correct, we must also consider whether she may be retried on those counts.
A. Evidentiary Admission Issues
1. Standard of Review
¶ 20 We review a trial court's decision regarding the admission of evidence for an abuse of discretion. People v. Ibarra, 849 P.2d 33, 38 (Colo.1993) ; People v. Clark, 214 P.3d 531, 538-39 (Colo.App.2009), aff'd, 232 P.3d 1287 (Colo.2010). A trial court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair." Ibarra, 849 P.2d at 38 ; see Clark, 214 P.3d at 539.
2. Hearsay
¶ 21 Defendant contends the trial court erred when it admitted her banking records from Netbank and records Comdata provided to CDL because they were inadmissible hearsay and their admission violated her Confrontation Clause rights. We agree, but only in part.
a. Law
¶ 22 Hearsay is an out-of-court statement made by someone other than the declarant while testifying at trial, which is offered to prove the truth of the matter asserted. CRE 801(c). Hearsay is inadmissible unless it falls within a statutory exception or an enumerated exception in CRE 803 or 804. CRE 802. We can affirm a trial court's evidentiary ruling on any ground supported by the record, "even if that ground was not articulated or considered by the trial court." People v. Phillips, 2012 COA 176, ¶ 63, 315 P.3d 136.
¶ 23 Computer-generated business records are admissible under CRE 803(6) if: (1) the computer entries are made in the regular course of business; (2) those participating in making the record were acting in the routine course of business; (3) the input procedures were accurate; (4) the entries were made within a reasonable time after the transaction involved; and (5) the information was transmitted by a reliable person with knowledge of the event reported. People v. Huehn, 53 P.3d 733, 736 (Colo.App.2002). The fact that documents are created by one business, but are introduced through another business or department that regularly receives, maintains, and relies on the records, does not preclude the admission of the documents as business records of the recipient business. Id. at 737. The division in Huehn declined to find an abuse of discretion where the trial court did not require additional authentication *838 of computer-generated records of ATM card transactions due to their status as bank records and sufficiently high degree of trustworthiness. Id. at 738.
b. Netbank Statements
¶ 24 Defendant objected to the admission of copies of her bank account statements spanning April 2007 to June 2007. She asserted that the statements were hearsay, and specifically that, while they might be business records, the prosecution had laid an insufficient foundation for their admission. The prosecution argued that (1) defendant had provided the statements directly to law enforcement officials and averred that they were her bank statements, and (2) thus, the statements were an adoptive admission by defendant and did not constitute hearsay.
¶ 25 The trial court admitted the documents, concluding that the bank was defendant's agent to collect information and money, and to account for that money. Alternatively, the trial court held the statements likely fell under the general business records exception. Further, the court found the statements were authenticated because defendant provided them to the detective.
¶ 26 The Netbank statements showed that certain unauthorized checks drawn on CDL's account had been deposited in defendant's bank account. Therefore, they provided necessary evidence that defendant intended to permanently deprive CDL of the funds deposited, an essential element of the charge of theft under section 18-4-401(1)(a), C.R.S.2013. Because of the statements' importance, defendant is likely to raise her hearsay and confrontation objections again if the case is retried.
¶ 27 We agree with the trial court's conclusion that the bank statements were admissible as business records under CRE 803(6), but we do so based on different grounds. See Phillips, ¶ 63.
¶ 28 No witness appeared from the bank to testify regarding the statements. Federal courts have addressed under Fed.R.Evid. 803(6), the federal counterpart to CRE 803(6), the question presented here: whether a trial court abuses its discretion when it admits bank records or statements under the business records hearsay exception without foundational testimony from a bank records custodian. Where, as here, a federal rule of evidence is substantially similar to its Colorado counterpart, we consider cases interpreting the federal rule instructive. See, e.g., Just In Case Bus. Lighthouse LLC v. Murray, 2013 COA 112, ¶ 40, 383 P.3d 1 ; People v. Warrick, 284 P.3d 139, 143 (Colo.App.2011).
¶ 29 In United States v. Johnson, 971 F.2d 562, 571 (10th Cir.1992), the Tenth Circuit Court of Appeals held that failure to call a bank's records custodian does not necessarily determine the admissibility of bank records. It held that "[a] foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." Id. (quoting Fed. Deposit Ins. Corp. v. Staudinger, 797 F.2d 908, 910 (10th Cir.1986) ); see also United States v. Peninger, 456 Fed.Appx. 214, 217-18 (4th Cir.2011) (records of commodity futures trading firm admissible even without custodial witness due to reliability of records and highly regulated nature of industry); Fed. Deposit Ins. Corp. v.Howeth, 46 F.3d 65 (5th Cir.1995) (summary calendar) (no abuse of discretion in admitting computer generated printouts based on dissolved bank's records prepared by the Federal Deposit Insurance Corporation (FDIC) as receiver for the bank even though the FDIC witness could not testify to the bank's recordkeeping practices); 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.08[8][c] (Joseph M. McLaughlin ed., Mathew Bender 2d ed.2014). The nature of bank records and their trustworthiness, due to the "fastidious nature of record keeping in financial institutions, which is often required by governmental regulation," along with the records as a whole, can establish a sufficient foundation for the bank records' admission. See Johnson, 971 F.2d at 571.
¶ 30 We agree with the rationale of the federal cases interpreting Fed.R.Evid. 803(6) and apply it here. Defendant testified *839 that the Netbank statements admitted were copies of her bank account statements for April and May 2007 and that she accessed the statements online from the bank's website and printed them for the detective investigating this case. Because of the particular nature of bank statements, and the fact that defendant obtained her bank statements and personally delivered them to the detective, the trial court could have taken judicial notice of the statements as business records. See Johnson, 971 F.2d at 571.
¶ 31 Accordingly, under the facts presented, the trial court did not abuse its discretion when it admitted the bank statements under CRE 803(6).
c. Comdata Records
¶ 32 Defendant argues the trial court erred when it concluded that records of CDL's cash card transactions apparently generated by Comdata fell within the business records exception to the hearsay rule. Because those records provide significant evidence regarding the transactions in question, defendant will likely reassert her objections at the retrial on remand.
¶ 33 The prosecution sought to admit, through CDL's office manager, (1) a report concerning the CDL Comdata cards, including card numbers issued to CDL's employees by name; (2) a report detailing all transactions for January 2006 on the Comdata cards issued to CDL employees; and (3) a report of all transactions on Comdata card 9406 from July 2006 through February 2007.
¶ 34 Defendant objected to the admission of these records, arguing that they were not CDL's business records, but rather Comdata records, as to which no custodian or foundational witness was present to testify. The trial court admitted the documents as business records, without specifying whether they were records of CDL or Comdata.
¶ 35 CDL's office manager testified that she "printed out" the list of cards issued to CDL employees. She received the reports of transactions from "a lady at Comdata" via e-mail. The office manager conceded that this type of record for each particular card was not kept at CDL. While the Comdata card admitted into evidence indicates that it is a MasterCard debit card issued by AmSouth Bank, we are unable to determine from the record whether "Comdata" is a trade name or affiliate of that bank, who prepared the documents e-mailed to CDL's office manager, or the source of the data in those documents. The prosecution did not call or attempt to call any witness from Comdata or AmSouth Bank.
¶ 36 Thus, the trial court abused its discretion when it admitted the records from Comdata without the testimony of a foundational witness establishing the Huehn requirements for admission under CRE 803(6). Because these records constituted a significant portion of the prosecution's evidence demonstrating the unauthorized movement of CDL funds onto the cash card, and the subsequent spending or withdrawal of those funds, we cannot say that the admission of the documents did not substantially influence the verdict on the Comdata counts; therefore, their admission was not harmless.
3. Confrontation Clause
¶ 37 Defendant argues that admission of the Netbank statements and records received from Comdata violated her right to confrontation under the Confrontation Clauses of the United States and Colorado Constitutions. We disagree with respect to with respect to the Netbank statements. In light of our conclusion that the Comdata documents were inadmissible without necessary foundational testimony, we need not reach the constitutional issue as to those documents. See People v. Lybarger, 700 P.2d 910, 915 (Colo.1985).
¶ 38 The admission of testimonial hearsay violates a defendant's right to confrontation under the Sixth Amendment of the United States Constitution absent unavailability of the declarant and a prior opportunity for cross-examination by the defendant. People v. Vigil, 127 P.3d 916, 921 (Colo.2006) (citing Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ). Testimonial statements include ex parte in-court testimony; extrajudicial statements in formalized materials such as affidavits, depositions, *840 prior testimony, or confessions; and statements made under circumstances which would lead an objective witness to reasonably believe the statement would be used at a later trial. Id. (citing Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354 ).
¶ 39 We review a defendant's claim of a Confrontation Clause violation de novo. People v. Valles, 2013 COA 84, ¶ 53, 412 P.3d 537.
¶ 40 Defendant's personal bank account statements from Netbank were not created for testimonial purposes. While duplicates of the statements may have been obtained in the course of investigating this case, the original statements were generated to facilitate the administration of the defendant's bank account. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (noting that business records are generally admissible without confrontation because they are created for the administration of an entity's affairs, not for the purposes of proving facts at trial). Because the Netbank statements are nontestimonial, the federal Confrontation Clause is not implicated.
¶ 41 With respect to defendant's Colorado Confrontation Clause argument, a general constitutional objection is presumed to be based on federal Constitutional grounds. Martinez v. People, 244 P.3d 135, 139 (Colo. 2010). Our supreme court therefore has made clear that preservation of a Colorado Constitutional argument for appeal requires that a defendant make an objection that is sufficiently specific to call the trial court's attention to the potential error under the Colorado Constitution. Id. at 140. Here, defendant did not object to the trial court's admission of the Netbank records on the basis of the Colorado Confrontation Clause. Accordingly, we may not consider the argument on appeal.
B. Sufficiency of the Evidence
¶ 42 Defendant contends the evidence was insufficient to sustain her convictions on only the theft counts based on the transfers made to the Comdata cash card (counts five, six, and seven). We address this issue because if a defendant is entitled to reversal of her convictions on appeal due to insufficient evidence, the guarantees against double jeopardy in the United States and Colorado Constitutions may preclude retrial. See, e.g., Lybarger, 700 P.2d at 910 ; People v. Miralda, 981 P.2d 676, 680 (Colo.App.1999). We conclude that while the properly admitted evidence presented in support of the Comdata counts was insufficient, the counts are nonetheless subject to retrial on remand.
¶ 43 We review de novo whether there is sufficient evidence to support a conviction. See Clark v. People, 232 P.3d 1287, 1291 (Colo.2010). When reviewing the sufficiency of the evidence, we consider whether the evidence, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support the jury's verdict beyond a reasonable doubt. Id.
¶ 44 As relevant here, a person commits theft when she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by deception, and intends to deprive the other person permanently of the use or benefit of the thing of value; or knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit. § 18-4-401(1)(a)-(b).
¶ 45 The parties agree that counts five through seven relate only to Comdata transactions. For the reasons discussed above, we have concluded that the Comdata records should not have been admitted at trial. Without those records, there is no evidence showing that that defendant made numerous cash loads onto Comdata card 9406, that such a card even existed, or that numerous cash withdrawals were made using that card. Thus, there would be no evidence that defendant exercised control over the cash loaded onto card 9406 or intended to permanently deprive CDL of that cash. We therefore conclude that there was insufficient properly admitted evidence to support the three Comdata counts.
¶ 46 Defendant argues that counts five through seven should therefore be vacated.
*841 However, it is well-established that where the evidence admitted at trial, whether or not in error, would have been sufficient to sustain a guilty verdict, the prosecution is entitled to a retrial on remand. Lockhart v. Nelson, 488 U.S. 33, 34, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) ; People v. Sisneros, 44 Colo.App. 65, 67-68, 606 P.2d 1317, 1319 (1980). As a division of this court explained in Sisneros,
[I]f a conviction is reversed solely because of evidentiary insufficiency, the double jeopardy clause of the United State Constitution requires entry of a judgment of acquittal. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, where reversal is predicated upon trial error consisting of the reception of inadmissible evidence, remand for a new trial is proper, Burks v. United States ....
Sisneros , 44 Colo.App. at 67-68, 606 P.2d at 1319 ; see also People v. Williams , 183 P.3d 577, 581 (Colo.App.2007) (citing Lockhart and Sisneros and remanding for retrial where the evidence, including a laboratory report that had been improperly admitted without a proper foundational witness, was held sufficient); People v. Cooper, 104 P.3d 307, 312 (Colo.App.2004) (citing Lockhart and Sisneros ).
¶ 47 Thus, in determining whether the evidence was sufficient to justify retrial, we must consider the documents CDL received from Comdata despite our conclusion that they were improperly admitted. The People presented the following evidence to support the cash card theft charges:
• Two Comdata cards were issued in CDL's owner's name in March 2004, card 6515 and card 9406.
• One copy of card 6515 was in the owner's possession.
• A duplicate card 6515 was located in defendant's desk.
• Card 9406 was not found during the investigation.
• CDL's owner and office manager were unaware that card 9406 existed.
• Comdata records showed that numerous cash loads had been made onto card 9406.
• Defendant's name was listed as the initiator of the cash transfers onto card 9406. No other names appeared as initiators of transactions on card 9406.
• Defendant was the only person with authority to load funds onto the Comdata cards. CDL's owner did not load the Comdata cards.
• Many of the cash loads were initiated at night, outside of defendant's regular daytime working hours.
• The card was used to make purchases and for cash withdrawals.
¶ 48 The foregoing evidence supports the conclusion that defendant knowingly exercised control over the funds she placed on the Comdata card without authorization. Even absent direct evidence that defendant spent or withdrew the money loaded onto card 9406, viewing the evidence in the light most favorable to the prosecution, we conclude that a jury could find beyond a reasonable doubt that defendant knowingly exercised control over the money transferred without authorization to card 9406 with the intent to permanently deprive the owner of the money.
¶ 49 Because the evidence, taking into account the improperly admitted Comdata records, would be sufficient to sustain defendant's convictions for theft under counts five through seven, those counts are subject to retrial on remand.
III. Conclusion
¶ 50 The judgment is reversed and the case is remanded to the trial court for a new trial on all counts consistent with the views expressed in this opinion.
JUDGE WEBB and JUDGE NIETO* concur.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2013.